[Civ. No. 5676. Fourth Dist. Apr. 22, 1959.]

Estate of ABKAR SETRAKIAN, Deceased. HASMIK BESOYAN et al., Appellants, v. SOUREN SETRAKIAN et al., Respondents.

Crossland, Crossland & Richardson, William C. Crossland and James T. Barstow for Appellants.

C. Ray Robinson, W. E. Craven, Leo Kolligian and Oren, McCartney, Sells & Edman for Respondents.

STONE, J. pro tem.*—This is an appeal from a decree prorating and charging the federal estate taxes and California inheritance taxes among the devisees and legatees of Abkar Setrakian, deceased.

## THE FACTS

The testator, by his will executed June 2, 1948, made certain specific bequests which disposed of an inconsequential portion of his estate. The residue he gave, devised and bequeathed to his two sons in trust with directions as to the management and distribution thereof. The estate was appraised at $911,767.11. The final account reflects total charges

---

*Assigned by Chairman of Judicial Council.

of $1,934,823.42 from which all claims against the estate, all taxes including federal and state inheritance taxes, expenses of administration, special bequests, and support payments totaling $564,785.78 were paid, leaving to be distributed to the trustees the sum of $1,370,037.64.

The final account requested that, ''by its decree the Court order the executors and trustees to charge the prorated amounts of the Federal Estate Tax paid by the executors against the persons against whom the tax has been prorated and direct the trustees to withhold from the moneys payable to the beneficiaries of the trust all such taxes so paid by the executors.'' The probate court determined that the bequests of the four appellants, who are daughters of testator, should each be charged with payment of federal estate taxes in the sum of $21,338.46, and California inheritance taxes in the amount of $1,653.63. The trust provides that each daughter is to receive $125,000, payable in 14 annual installments of $8,000, and a final installment of $13,000. The only record before us is the clerk's transcript, and it is not manifest from it how the federal estate tax was prorated nor how the amount of $21,338.46 was computed. It would appear that the tax was apportioned by determining the ratio which $125,000 bears to the value of the total net taxable estate for federal estate tax purposes. The appellants contend that the federal estate taxes and the California state inheritance taxes should be paid out of the corpus of the trust, rather than from the payments to be made to them under the terms of the trust.

## The Will

The following provisions of the will give rise to the problems which confront us on this appeal:

''3. After making the payments herein provided for my wife, the trustees shall pay to each of my four daughters, or the lawful living issue of any deceased daughter, share and share alike per stirpes and not per capita, the sum of One Hundred Twenty-five Thousand Dollars ($125,000.00) in fourteen annual installments of Eight Thousand Dollars ($8000.00) and the fifteenth installment in the amount of Thirteen Thousand Dollars ($13,000.00). In the event that any lawful issue of a deceased daughter shall be a minor at the time of becoming entitled to any payments under the provisions of this paragraph, any such payments shall be made to the Trust Department of Security-First National Bank of Los Angeles, Fresno, California, until any such

minor shall attain lawful age, at which time said Bank shall pay over to any such child any sums then in its possession belonging to any such child, free from any trust. Payments under this paragraph shall be made out of principal if the net income from the trust estate be not sufficient therefor.

"4. After making the payments hereinabove provided for my wife and my daughters, the trustees shall currently distribute the remaining net income of the trust estate to my two sons, and the lawful living issue of a deceased son, share and share alike per stirpes and not per capita; said net income shall be determined annually upon the basis of such calendar or fiscal year as shall be adopted by the trustees; the date from which payment of income shall accrue shall be the date of my death, but payments accruing during probate administration shall not bear interest.

"5. The interests of beneficiaries in principal or income shall not be subject to claims of their creditors or others, nor to legal process, and may not be voluntarily or involuntarily alienated or encumbered."

The will contains no provision or direction as to the apportionment of federal estate taxes or California inheritance taxes among the devisees and legatees.

The federal estate tax and the California inheritance tax are dissimilar in nature and in the manner by which the amount of each is determined. Furthermore, the proration of the federal estate tax is governed by the Probate Code, while the California inheritance tax comes within the provisions of Revenue and Taxation Code. Hence, of necessity, the two problems will be treated separately.

### PRORATION OF FEDERAL ESTATE TAXES

The federal estate tax is not a succession tax, that is, it is not a tax on what the devisees, legatees, beneficiaries, or heirs receive, but it is a tax upon what is left by the decedent. It is an excise tax on the interest which is shifted or transferred by reason of the death of the owner. The United States Supreme Court said, in the case of *Young Men's Christian Assn.* v. *Davis*, 264 U.S. 47, at page 50 [44 S.Ct. 291, 68 L.Ed. 558] : "What was being imposed here was an excise upon the transfer of an estate upon death of the owner. It was not a tax upon succession and receipt of benefits under the law or the will. It was death duties as distinguished from a legacy or succession tax. What this law taxes is not the interest to which the legatees and devisees succeeded on death, but the interest

which ceased by reason of the death." (See also *Estate of Madison*, 26 Cal.2d 453, 458 [159 P.2d 630]; *Security First Nat. Bank* v. *Wellslager*, 88 Cal.App.2d 210, 214 [198 P.2d 700]; *United States Trust Co. of New York* v. *Helvering*, 307 U.S. 57, 60 [59 S.Ct. 692, 83 L.Ed. 1104].)

■ The federal estate tax is governed entirely by federal statute in respect to the nature of the tax, the manner or method of its computation, and the liability for the payment thereof to the United States. (26 U.S.C.A. chap. 11.) The controlling federal statutes provide that the estate tax is a lien on the entire "gross estate" and that it shall be paid by the executor or administrator (26 U.S.C.A. §§ 2002, 2031; *United States* v. *Woodward*, 256 U.S. 632, 635 [41 S.Ct. 615, 65 L.Ed. 1131]; *Estate of Buckhantz*, 120 Cal.App.2d 92, 98 [260 P.2d 794]; *Estate of Atwell*, 85 Cal.App.2d 454, 460 [193 P.2d 519].) On the other hand, the ultimate thrust or the impact of the federal estate tax is governed entirely by state law (*Riggs* v. *Del Drago*, 317 U.S. 95, 98 [63 S.Ct. 109, 87 L.Ed. 106, 142 A.L.R. 1131]; *Estate of Atwell, supra*; *Estate of Buckhantz, supra*; *Security First Nat. Bank* v. *Wellslager, supra*, 213.) Under the authority of California law, the testator may direct in his will which fund shall bear the tax and he may also exonerate any particular devise or bequest from that burden. The will before us contains no such provision. Therefore, the manner of prorating the federal estate tax must be determined from an interpretation of Probate Code, sections 970 through 977. We believe sections 970, 971 and 973 are controlling in this case. Section 970, insofar as here pertinent, provides that when an executor has "paid an estate tax to the Federal Government under the provisions of any Federal estate tax law, now existing or hereinafter enacted, upon or with respect to any property required to be included in the gross estate of a decedent under the provision of any such law, the amount of tax so paid, except in a case where a testator otherwise directs in his will . . . shall be equitably prorated among the persons interested in the estate to whom such property is or may be transferred or to whom any benefit accrues." Section 971 reads as follows:

"The proration shall be made by the court having jurisdiction in probate of any property in the estate in the proportion, as near as may be, that the value of the property, interest or benefit of each such person bears to the total value of the property, interests and benefits received by all such persons interested in the estate."

It is apparent upon reading sections 970 and 971 that they are indefinite in some particulars and contain no explicit directives to the probate court concerning the exercise of its equity jurisdiction. The sections do not define the term "estate" as distinguished from the term "taxable estate," nor do they delineate the relation of the interest of the beneficiary or heir to the creation of the tax. However, there are decisions interpreting these two sections which do define the term "the estate" from which the federal estate tax must be determined, and they also define the terms "property, interest and benefits," with reference to which the federal estate tax is to be prorated. ▆ One of the early cases interpreting these sections is *Security First Nat. Bank.* v. *Wellslager*, 88 Cal.App.2d 210, which aptly summarizes the purpose and nature of the code sections at page 213 [198 P.2d 700], as follows: "Their purpose is to apportion equitably the burden of the tax so that it is borne commensurately by those whose gifts contribute to the tax burden and there is eliminated from such burden all whose legacies do not in any way create or add to the tax."

In other words, Probate Code, sections 970 and 971, are founded on equity, which dictates that any legacy or inheritance which adds to the federal estate tax should be required to bear its just proportion of that tax. Conversely, any legacy or inheritance which does not create or add to the tax should be spared such burden. ▆▆ The manner in which this principle shall be applied is enunciated in *Estate of Buckhantz*, 120 Cal.App.2d 92, wherein the court says at page 99 [260 P.2d 794]:

"When the incidence of the tax is to be borne by several parties, the general rule under such statutes is that the tax is to be prorated in the proportion which each share bears to the total taxable property; only the value of property actually taxed may be considered; and the proration must be predicated solely on the property of the decedent included in the gross estate for federal estate tax purposes and on the parts thereof which devolved to the several legatees and devisees on the death of the testator, *excluding from consideration benefits received from the decedent which are not included in the taxable estate. (Security First Nat. Bank* v. *Wellslager*, 88 Cal. App.2d 210, 213 [198 P.2d 700]; 47 C.J.S. 1017, § 776 and cases there cited.) *The court is bound by the actual fact of inclusion or exclusion of property by the federal taxing authorities.* The task of proration begins at the point where

the taxing authorities end their duty of fixing the estate tax; it takes the accomplished fact of taxation and then prorates the burden on the actuality of the tax." (Italics added.)

The general rules expressed in the *Security-First Nat. Bank* v. *Wellslager* and *Estate of Buckhantz* decisions governing the interpretation of sections 970 and 971 apply also to Probate Code, section 973, relating to trusts. Section 973 provides: "In cases where a trust is created, or other provision made whereby any person is given an interest in income, or an estate for years, or for life, or other temporary interest in any property or fund, the tax on both such temporary interest and on the remainder thereafter shall be charged against and be paid out of the corpus of such property or fund without apportionment between remainders and temporary estates."

At first reading the import of this section seems clear enough without court interpretation or direction as to its application. However, one of the trust provisions in the testator's will presents an ambiguity which cannot be resolved by Probate Code, section 973, alone, and resort must be had to the cases interpreting sections 970 and 971. Turning now to the will, it must be kept in mind that (1) each beneficiary who receives a legacy which was part of the gross estate at the time of the testator's death, and which created or added to the federal estate tax should bear his pro rata share of the estate tax, while (2) those who receive a legacy which was not a part of the "gross estate" should not bear the thrust of the tax. Had testator provided that the legacy to each daughter be paid from income, our problem would be simple, as obviously income accruing to the trust after testator's death could not have been a part of his "gross estate." Probate Code, section 973, would be applicable and clearly the tax would fall on the corpus or principal of the trust estate. Nor would there be any problem had testator directed that $125,000 of his estate be set aside for each daughter to be paid to her in 15 annual installments. The legacy would be a part of the "gross estate" and paid from funds which created or added to the federal estate tax. Probate Code, section 971, would prevail and each beneficiary would quite properly be required to reimburse the executors her pro rata share of the federal estate tax. Unfortunately, the provisions of the will are not clear-cut in this respect. The testator devised and bequeathed all of the residue of his estate in trust to his two sons, directing them as trustees to first pay the sums specified for the

support of his widow and next to pay to each daughter the sum of $8,000 per year for 14 years, and $13,000 the fifteenth year. The problem arises because he then concluded the paragraph with the following sentence: "Payments under this paragraph shall be made out of principal if the net income from the trust estate be not sufficient therefor." It is apparent that the testator hoped that the bequests would be paid from income since he provided in the next paragraph that after the payments to the widow and the four daughters had been made, the remaining *income* should be divided between the respondents. Regardless of his hopes, the will contains the provision that if the income should prove insufficient the trustees were to make the payments from principal. Thus, the question presented to us is whether the "contingency clause" providing for payment out of principal if necessary, changes the legacy from one of trust income to a straight money bequest similar to an annuity. Counsel for one of the parties has observed that the question has never been decided by a California court. We take it this statement is correct as no California authority has been cited and the court has been unable to locate any. However, there are decisions by the courts of New York bearing on the issue. New York has a statute providing for proration of federal estate taxes which is very similar to ours. (Decedent Estate Law of New York, § 124; *Security-First Nat. Bank* v. *Wellslager, supra,* 216; *Estate of Hotaling,* 74 Cal.App.2d 898 [170 P.2d 111].) While the decisions of other states are not controlling, they are persuasive and serve as guides in the initial interpretation of local statutes of like import. The case of *In re Provot's Estate,* 62 N.Y.S.2d 437, presented a factual situation which parallels the one before us. In the New York case, the testator directed his trustees to pay a beneficiary $4,000 per year in quarterly installments and provided, "I direct that it be paid out of the income of the said trust, but if in any one year the income of the trust is not sufficient, then I direct that the deficit be made up out of the principal of the said trust fund." The court held that the federal estate tax should be paid out of the corpus of the trust saying, on page 439: "The court holds that such exception is here applicable and that the estate taxes due to the grant to the life beneficiary of income rights and supplementary rights in principal are chargeable wholly to the capital of the residuary trust without obligation to make any refund whatever. Clearly the beneficiary takes pursuant

to the trust and she has 'an interest in income' within the terms of section 124, Decedent Estate Law.''

In construing the same statute a New York court was faced with a similar factual situation in the case of *In re Thomas' Estate,* 96 N.Y.S.2d 232. The trust provided for payments to the beneficiary of $300 per month for life and, further, that ''if the income of the 'trust fund' shall not be sufficient to enable the trustees to pay over that sum then 'the trustees shall pay to David Small from principal such amounts as will bring the total amounts actually paid over to him to Three Hundred Dollars ($300) per month.' '' The court squarely met the question of the effect of the trustees' right to resort to principal in order to make the payments provided for by the trust, and held, at page 234:

''The court holds that the will creates a trust within the meaning of the statute and grants to the beneficiary 'an interest in income, or an estate for . . . life, or other temporary interest' in the fund. Decedent Estate Law, Sec. 124, *supra*; *Matter of Murphy's Estate,* 124 Misc. 672 [209 N.Y.S. 686] ; *Matter of Smathers' Will,* 133 Misc. 812 [234 N.Y.S. 99] ; *In re Brown's Est.,* Sur., 65 N.Y.S.2d 624. No amortization of the tax will be required. The power given to the trustee to invade principal if necessary in order to maintain the monthly payments, does not evidence an intention to create an annuity nor alter the evident character of the interest as one pertaining to income. *Matter of Provot's Estate,* 188 Misc. 802 [62 N.Y.S.2d 437]. The relationship between the net yearly payments to be made and the size of the fund (a ratio of 1.8 percent) indicates that in normal years a conservative yield will be more than sufficient to provide for the required payments and indicates an intention on the part of the testator to create a true trust to pay over income. The power to invade is merely a protection to be employed in lean years and does not convert the gift into an annuity. *Matter of Provot, supra*; *Matter of Michaelis.*''

We conclude that the trust payments to be made to the appellants, daughters of trustor, constitute an interest in income and a temporary interest in the trust estate, within the meaning of section 973 of the Probate Code. The federal estate tax imposed upon the gross taxable estate of the decedent should not be charged against the trust payments to be made to appellants. We are impelled to this interpretation of Probate Code, sections 970, 971 and 973, as applied to the will before us, not alone because of the New York cases reach-

ing the same conclusion, but for the additional reason that the intent of the testator, insofar as it can be gleaned from the rest of the will, reflects a transfer of a temporary interest in the trust estate. It is not a bequest or a legacy of a sum of money, the use and enjoyment of which is deferred, there is no setting apart of the sum of $125,000 for the benefit of each appellant. Rather, the entire estate is devised and bequeathed to the trustees. They in turn are directed to make payments to the daughters out of income, and if income be insufficient the difference to be supplied from principal. It is primarily an income trust. Its provisions follow those of the typical spend-thrift trust as the testator provided against attachment of the payments by creditors or others and he prevented alienation of them by the beneficiaries. He also directed the disposition of the payments in the event any beneficiary failed to survive to receive them. It is also significant that the testator pro-vided in Paragraph 4 of the trust that "the date from which payment of income shall accrue shall be the date of my death, but payments accruing during probate administration shall not bear interest." No reference is made to principal, and it is palpable that the testator was thinking in terms of an income trust and a temporary interest for his daughters.

It is rare indeed when there are no facts peculiar to the particular matter before the court, and this case is no excep-tion. The will was admitted to probate December 24, 1948, and an order for distribution of the residue of the estate to the trustees as provided by Paragraph 10th of the will was made September 27, 1957. The petition for distribution re-flects that between December 24, 1948, and September 27, 1957, there was a net gain in excess of $800,000 to the residue of the probate estate, which is now the corpus of the trust estate. At the time of his death decedent and his brother had developed extensive vineyard properties and affiliated busi-nesses. Ownership was evidenced by corporate stock. At the time of death the appraised value of the stock was $623,500. During the course of probate administration the stock was sold for $1,470,522.50, or an income to the estate of $838,022.50. This aspect of the case was not presented or considered by counsel for any of the parties. We therefore anticipate that respondents would argue that this is not income but a capital gain. And so it is from a purely accounting standpoint, but judged in the light of the rule laid down in the Buckhantz case governing the proration of federal estate taxes, the $800,000 gain was not a part of decedent's gross estate for federal

estate tax purposes. This $838,022.50 although a part of the trust estate in no way contributed to the amount of federal estate taxes assessed against the probate estate. If we follow the theory of equitable proration to its logical and perhaps its ultimate conclusion, by correlating the thrust of the federal estate tax to the gross taxable estate of the decedent, the peculiar facts of this case support the conclusion that the payments to the beneficiaries should not be charged with any federal estate tax. The value of the trust estate indicates that in the normal course of events there should be sufficient income to provide the annual payments provided for by the trust. In the event the income falls short of this in any year, there is ample trust principal which was not a part of decedent's gross taxable estate to supplement current income. Therefore, the federal estate tax should be paid from the corpus of the trust estate.

### CALIFORNIA INHERITANCE TAX

█ The California inheritance tax is a tax upon what the beneficiary receives (*Estate of Knapp*, 37 Cal.2d 827, 831 [236 P.2d 372] and cases cited therein) and not upon the "gross taxable estate" of decedent. Any interest in the decedent's property accruing to a beneficiary, whether it be a, future interest or otherwise, is taxable. Therefore the legacy of each appellant in this case unmistakenly adds to the California inheritance tax assessed by reason of the death. If we were to apply the equity principle of proration and the rule of the Buckhantz case, then clearly the tax would be chargeable against the interest of each beneficiary, whether the legacy is payable from trust income or corpus. But the Probate Code does not govern the impact of California inheritance taxes and the rule of the *Estate of Buckhantz*, which correlates the thrust of the tax to its creation, cannot be applied. The payment of the California inheritance tax is governed by Revenue and Taxation Code, sections 14121 through 14128. These code sections provide that in certain situations the California inheritance tax is payable from the corpus and that no part of the tax may be collected from the transferee. That the State of California has the authority to determine the taxability of a transfer and the impact of the resulting tax is well settled. ██ It was said in *Estate of Atwell*, 85 Cal.App.2d 454, at page 461 [193 P.2d 519]: "The right to receive property by will or inheritance is not a natural right, but is a creature of the law. (Citations.) The state may confer the privilege of succeeding to property upon

the condition that any portion of the property it specifies shall be contributed to that state.''

██ In considering the question of the proration of the federal estate tax in a preceding portion of this opinion we concluded that the testator created an income, spendthrift trust. Therefore, Revenue and Taxation Code, section 14124, is applicable. That section provides: ''Where a transferor has given one person any right, interest, or estate for life or for a term of years, and another person the remainder over, in the same property, the executor, administrator, or trustee shall pay the tax on each transfer out of the corpus of the property. The tax shall not be charged against the right, interest, or estate of, nor shall it be collected from, either transferee.''

Under the terms of the will before us the appellant beneficiaries were given an interest in the corpus of the estate, namely, the right to receive certain income, for a term of 15 years, with remainder over to the two sons who are the residuary legatees as well as the trustees. Therefore, it follows that the California inheritance tax should be paid out of the corpus of the trust estate pursuant to Revenue and Taxation Code, section 14124.

The order is reversed.

Griffin, P. J., and Mussell, J., concurred.

A petition for a rehearing was denied May 22, 1959, and respondents' petition for a hearing by the Supreme Court was denied June 18, 1959.